## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

JAMES ANDERSON, SR.,

       Petitioner,

   v.

JERMAINE WHITE,

       Respondent.

CIVIL ACTION NO.: 2:20-cv-128

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Petitioner James Anderson ("Anderson") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2012 Wayne County, Georgia convictions and sentence. Doc. 1. Respondent filed an Answer-Response and supporting exhibits. Docs. 8, 9, 10. Anderson filed a Reply. Doc. 13. For the reasons set forth below, I **RECOMMEND** the Court **DENY** Anderson's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, doc. 1, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Anderson leave to proceed *in forma pauperis* and a Certificate of Appealability. I **GRANT** Anderson's Motions for Report and Recommendation and **DENY** his alternative Motion for Recusal. Docs. 16, 18.

**BACKGROUND**

Petitioner was convicted on various charges in the Superior Court of Wayne County, Georgia in 2012. Petitioner now seeks habeas relief related to those convictions. It is helpful, at the outset, to summarize the facts that gave rise to Petitioner's convictions.[1]

In 2011, Anderson's son and his son's wife, Ms. Brittany Smith (formerly Anderson), were in the process of getting a divorce. On June 29, 2011, Anderson's son and Ms. Smith's paramour, Franklin Burch, had an argument. Anderson was not present for the argument. Later that night, Anderson confronted Mr. Burch at Mr. Burch's home. Ms. Smith witnessed the confrontation. At the outset of the confrontation, Anderson exited his vehicle with a loaded rifle. At trial, there was conflicting evidence about what happened next.

Anderson initially told investigators Mr. Burch began coming toward him. Anderson told the investigators he (Anderson) struck Mr. Burch in the abdomen with the barrel of the rifle. Anderson told investigators there was no struggle over the weapon, but the rifle discharged while the rifle was pressed against Mr. Burch's midsection. At trial, however, Anderson testified Mr. Burch came toward him and reached for the rifle and the two men struggled over the rifle while Mr. Burch tried pull the rifle from Anderson's hands. Anderson testified he did not know what happened at that point, only that the rifle discharged.

Ms. Smith offered a different view. Ms. Smith testified she saw Anderson approaching Mr. Burch with the rifle and called out for Anderson to stop. Ms. Smith testified she saw Mr. Burch put his hands up, and she heard Mr. Burch tell Anderson, "No, man, no." Doc. 9-1 at 2. Ms. Smith saw Mr. Burch step backward, away from Anderson, and then saw Mr. Burch was

---

[1]      Petitioner appealed the convictions, and the Georgia Supreme Court issued an opinion affirming the judgment. <u>Anderson v. State</u>, 805 S.E.2d 47 (Ga. 2017). In the opinion, the Georgia Supreme Court provides a detailed description of the evidence presented trial. Rather than repeat all those facts here, I provide only a brief summary.

bent over with his hand on the barrel of the rifle as it was placed against his abdomen.  Ms. Smith then heard the rifle go off and saw Mr. Burch slump to the ground.  Ms. Smith initially told investigators there had been a struggle over the weapon, but she testified at trial there was no struggle.  Although medical personnel attempted to treat Mr. Burch, he died from his injuries at the scene.

Anderson was indicted by a Wayne County grand jury for malice murder, felony murder, two counts of aggravated assault, voluntary manslaughter, and possession of a firearm during the commission of a felony.  Doc. 8-1 at 1.  Pete Theodocion represented Anderson at trial.  The jury found Anderson guilty of felony murder, one count of aggravated assault, and the firearms charge.  Anderson and was sentenced to life without parole, plus five years' imprisonment on the firearms count.  Doc. 1 at 4.

Anderson filed a motion for new trial, which the Wayne County Superior Court denied.[2] Doc. 9-8 at 2.  Marcia Shein represented Anderson at the motion for new trial proceedings and on appeal.[3]  Ms. Shein filed a supplement to the motion for new trial and argued there was insufficient evidence to sustain Anderson's felony murder conviction because there was no evidence to support a finding an aggravated assault occurred.  Doc. 9-11 at 380–84.  Ms. Shein also asserted Mr. Theodocion, Anderson's trial counsel, was ineffective for several reasons.  Id. at 384.  First, Ms. Shein argued Mr. Theodocion presented conflicting defenses and the self-defense defense was "entirely untenable."  Id.  Mr. Theodocion was also ineffective based on his

---

[2]      Mr. Theodocion filed the initial motion for new trial on Anderson's behalf.  Doc. 9-11 at 356.
Ms. Shein later entered an appearance on Anderson's behalf.  Id. at 362.

[3]      For convenience, I refer to Ms. Shein as Anderson's "appellate counsel" throughout this Report, though, to be clear, Ms. Shein represented Anderson during the motion for new trial proceedings and on appeal.  Anderson's challenges in this Petition all concern Ms. Shein's actions, either at the hearing on the motion for new trial or during the direct appeal.

inadequate cross-examination of Ms. Smith regarding her lack of clarity on whether there was a struggle over the firearm and his failure to cross-examine the State's medical examiner.  Id. at 385–88.  Ms. Shein asserted Mr. Theodocion was ineffective for failing to call an expert to establish the scrapes on Mr. Burch's abdomen were caused by Mr. Burch's struggle over the firearm.  Id. at 388–89.  In addition, Ms. Shein argued Mr. Theodocion was ineffective for failing to investigate and request an involuntary manslaughter charge even though the evidence supported this charge.  Id. at 389–90.  Finally, Ms. Shein argued Mr. Theodocion rendered ineffective assistance by failing to adequately question a juror about his relationships with law enforcement officials and Mr. Burch's family, which were so significant either the court should have removed the juror for cause or Mr. Theodocion should have moved to strike the juror.  Id. at 392.  Ms. Shein also stated the trial court erred in allowing testimony regarding unproven allegations of domestic disputes between Anderson and his wife.  Id. at 398–400.  The trial court judge held a hearing on the motion for new trial, heard testimony from several witnesses, and, ultimately, denied the motion in full.  Id. at 474–95; Doc. 9-12 at 1.

Anderson filed a direct appeal with the Supreme Court of Georgia through Ms. Shein. Doc. 9-12 at 2–3.  On appeal, Ms. Shein argued a juror, Mr. Harrison, concealed his connections with law enforcement officials, connections with Mr. Burch's family, and his involvement with the funerary services for Mr. Burch.  Doc. 10-1 at 99–112.  In addition, Ms. Shein asserted Mr. Theodocion rendered ineffective assistance for failing to uncover the juror's connections to Mr. Burch and other people involved in the case, the juror's viewing of evidence due to his job as an embalmer, and the juror's bias.  Id. at 112–16.  Ms. Shein also asserted Mr. Theodocion rendered ineffective assistance of counsel by failing to investigate the case and present expert testimony for Anderson's defense.  Id. at 117–21.  Further, Ms. Shein argued Mr. Theodocion rendered

ineffective assistance by failing to request an involuntary manslaughter charge.  Id. at 122–24.

Ms. Shein also argued the trial court erred by allowing testimony regarding unproven allegations

of domestic violence incidents between Anderson and his wife.  Id. at 124–27; see also id. at

199–217 (Anderson's reply brief).

The Georgia Supreme Court affirmed Anderson's convictions and sentence.  Doc. 1 at 4;

Anderson v. State, 805 S.E.2d 47 (Ga. 2017).  The Georgia court determined Anderson was not

entitled to a new trial based on Mr. Harrison (the juror) being on the jury, Anderson failed to

show Mr. Theodocion rendered ineffective assistance of counsel on any of the grounds alleged,

and any misstatement of evidence the trial court failed to rebuke during closing argument on the

alleged domestic violence incidents was harmless error.  Anderson, 805 S.E.2d at 77–86.

Anderson, proceeding pro se, filed a state petition for writ of habeas corpus in the Telfair

County Superior Court, raising as enumerations of error the following grounds (after

amendments), all of which concern alleged errors by Ms. Shein, Anderson's appellate counsel:

(1) appellate counsel failed to raise on appeal trial counsel's decision to present a defense of self-

defense or accident, doc. 9-2 at 5; (2) appellate counsel was ineffective for failing to raise on

appeal trial counsel's decision to allow the State to nolle prosequi the voluntary manslaughter

count after the jury was empaneled, doc. 9-3 at 1–2; (3) appellate counsel did not call a witness

she subpoenaed and who had provided an affidavit to counsel recanting portions of her trial

testimony (Ms. Smith), doc. 9-4 at 1–2; (4) appellate counsel failed to raise on direct appeal trial

counsel's failure to ask a juror (Mr. Harrison) specific questions about the juror's work, doc. 9-5

at 1–2; (5) appellate counsel did not raise on appeal trial counsel's failure to object to the

admission of three 911 calls, doc. 9-6 at 1–2; and (6) appellate counsel's failure to argue on

appeal trial counsel's failure to object to the prosecutor's comments during her closing arguments, doc. 9-7 at 1–2.

The Telfair County court conducted a hearing on Anderson's petition. Doc. 9-8 at 3; Doc. 9-11. The State's attorney gave the court an overview of the grounds Anderson raised in his petition. Id. at 3–5. Anderson, proceeding pro se, called Ms. Smith, Ms. Shein, and Mr. Theodocion to testify during this hearing. Doc. 9-11 at 6.

Ms. Smith provided her account of what happened the night Mr. Burch died and clarified she could have been asked at trial what she considered to be a struggle. Id. at 9–15, 17. Ms. Smith also testified Ms. Shein had contacted her (Ms. Smith) to inform Ms. Smith about the hearing on Anderson's motion for new trial. Ms. Smith gave Ms. Shein an affidavit for that hearing with the intent to show Anderson and Mr. Burch struggled over the rifle and Anderson never pointed the rifle at her or Mr. Burch. Id. at 19–20. Ms. Smith also testified she was subpoenaed to attend the motion for new trial hearing but Ms. Shein never called her to testify. Id. at 20–21.

Mr. Theodocion testified about Anderson's nolle prosequi issue, Theodocion's strategy for defenses to the charged offenses, Mr. Harrison (the juror), the entry of the 911 calls, and the arguments about domestic violence incidents between Anderson and his wife. Id. at 35–67.

Ms. Shein testified about how she and Anderson approached the motion for new trial proceedings and the grounds raised in those proceedings—including Mr. Theodocion being ineffective for failing to raise involuntary manslaughter as a defense. Ms. Shein testified she did not call Ms. Smith to testify during the motion for new trial hearing because Ms. Smith's testimony would have changed again and would have conflicted with her affidavit. Id. at 73–102, 106–11.

The Telfair County court denied Anderson's petition.  Doc. 9-8.  That state habeas court found Anderson failed to show Mr. Theodocion rendered ineffective assistance of counsel and, because of this failure, Anderson failed to show Ms. Shein was ineffective for failing to raise four of the six enumerations of error on appeal (i.e., issues about the all-or-nothing defense at trial,[4] allowing the prosecution to nolle prosequi the voluntary manslaughter charge, failure to object to admission into evidence of 911 calls, and trial counsel's failure to object based on prosecutorial misconduct after the prosecutor's reference to alleged domestic violence involving Anderson and his wife).  Id.  The Telfair County court also found Anderson failed to meet his burden of showing Ms. Shein rendered ineffective assistance of counsel during the motion for new trial proceedings when she did not call Ms. Smith to testify and when Ms. Shein did not call Mr. Harrison and Mr. Theodocion to testify in a different order.  Id.  The Georgia Supreme Court denied Anderson's certificate of probable cause to appeal the denial of his state habeas petition. Doc. 8-1 at 3; Doc. 9-9.

## DISCUSSION

In his Petition, Anderson raises several grounds of ineffective assistance of appellate counsel.  Docs. 1, 1-1.  According to Anderson, his motion for new trial and appellate counsel (Ms. Shein) rendered ineffective assistance during the motion for new trial phase because she did not call the witness (Ms. Smith) to the shooting, who clarified a portion of her trial testimony in a declaration, to testify, even though Ms. Shein subpoenaed this witness.  Id. at 7, 9.  Anderson also asserts Ms. Shein committed multiple errors during the appeal.  Specifically, Anderson argues Ms. Shein rendered ineffective assistance of counsel on appeal by failing to raise five

---

[4]     By "all-or-nothing defense," Anderson means the defense did not argue to the jury that Anderson could be convicted of a lesser-included offense.  Instead, the defense presented only two options: acquittal or conviction on the murder charges.

different errors by trial counsel (Mr. Theodocion): (1) the erroneous decision to present an all-or-nothing defense of accident and self-defense where the facts and applicable law supported a charge of involuntary manslaughter; (2) the failure to properly question a juror after it was discovered this juror was friends with the victim and the victim's family and the juror worked at the funeral home that handled the victim's service; (3) the failure to pursue a mistrial after the prosecution made improper comments during her closing arguments about domestic dispute issues between Anderson and his wife; (4) by allowing the State to nolle prosequi the voluntary manslaughter charge after the jury was empaneled; and (5) the failure to object to the State's admission of three 911 calls Anderson's Ms. Smith made.  Doc. 1 at 7–14.

Respondent generally denies Anderson's allegations and asserts the state habeas corpus court's findings on Anderson's enumerations of error are entitled to deference.  Doc. 8; Doc. 8-1 at 3.

## I.    The State Court's Determinations Are Entitled to Deference

### A.    Standard of Review

Section 2254(d) of Title 28 of the United States Code sets forth the deference to be afforded to a State court's legal determinations:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).  In reviewing a petitioner's habeas claim under § 2254(d)(1), a court should first determine the law that was "clearly established" by the United States Supreme Court at the time the State court adjudicated the petitioner's claim.  <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000). After determining the clearly established law, the reviewing court should next determine whether the State court's adjudication was "contrary to" clearly established Supreme Court case law or involved an unreasonable application of that clearly established Supreme Court law.  <u>Id.</u>  A state court's adjudication is contrary to clearly established Supreme Court caselaw if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id.</u> at 413 (O'Connor, J., concurring).  A state court's decision involves an unreasonable application of clearly established Supreme Court law if the "court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u>  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable.  <u>Id.</u> at 409 (O'Connor, J., concurring).  To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'"  <u>Knight v. Fla. Dep't of Corr.</u>, 936 F.3d 1322, 1331 (11th Cir. 2019) (quoting <u>Virginia v. LeBlanc</u>, 582 U.S. 91, 94 (2017); in turn quoting <u>Woods v. Donald</u>, 575 U.S. 312, 316 (2015)); <u>see also</u> <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (explaining "an unreasonable application is different from an incorrect one").  In applying the deference standard, a reviewing court is to look to the decision of the last court which issued a merits-based, reasoned determination.  <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018); <u>see also</u>

Pye v. Warden, Ga. Diagnostic Prison, 50 F.4th 1025, 1034 (11th Cir. 2022) (quoting Wilson and stating, "the federal court must 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale' and 'presume that the unexplained decision adopted the same reasoning.'").

**B.    Clearly Established Law**

The clearly established law regarding ineffective assistance of counsel is found in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  To make an ineffective assistance of appellate counsel claim based on appellate counsel's failure to raise ineffective assistance of trial counsel claims, the petitioner must make the same showing Strickland requires: "(1) his appellate counsel's failure to raise ineffective assistance of trial counsel was deficient performance, and (2) a reasonable probability exists that the neglected claim would have succeeded on appeal."  Icenhour v. Medlin, No. 6:12-cv-116, 2013 WL 3967399, at *2 (S.D. Ga. July 31, 2013) (citing Searcy v. Fla. Dep't of Corr., 485 F. App'x 992, 996 (11th Cir. 2012); in turn citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)).

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance'

by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "To show an attorney's choice of strategy is unreasonable, a petitioner must show no competent counsel would have made such a choice." Brooks v. Perry, No. CV418-248, 2019 WL 2913799, at *4 (S.D. Ga. May 7, 2019), report and recommendation adopted, 2019 WL 2913313 (S.D. Ga. July 3, 2019) (citing Strickland, 466 U.S. at 690). Prejudice "occurs if 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Rivers v. United States, Case Nos. CV415-194, CR414-99, 2016 WL 2646647, at *1 n.2 (S.D. Ga. May 9, 2016) (quoting Strickland, 466 U.S. at 687).

In the context of ineffective assistance claims previously rejected by a state court, the petitioner bears the even heavier burden of 'show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner.'" McDuffie v. Smith, No. CV 319-051, 2020 WL 2744113, at *8 (S.D. Ga. Apr. 3, 2020), report and recommendation adopted, 2020 WL 2739822 (S.D. Ga. May 26, 2020) (quoting Bell v. Cone, 535 U.S. 685, 699 (2002); and then citing Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting

where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable")). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 99. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (italics in original).

"Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. In addition, federal habeas courts are also guided "by the mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence." McDuffie, 2020 WL 2744113, at *9 (citing 28 U.S.C. § 2254(e)(1)). "Moreover, [the] AEDPA requires the Court give deference to the state-court decision, and that deference must be 'near its apex' when considering Strickland claims that turn on general, fact-driven standards." Boos v. White, No. CV 120-082, 2021 WL 4075828, at *5 (S.D. Ga. July 20, 2021), report and recommendation adopted, 2021 WL 4073281 (S.D. Ga. Sept. 7, 2021), certificate of appealability denied sub nom. Boos v. Warden, No. 21-13281-C, 2022 WL 892506 (11th Cir. Jan. 31, 2022), cert. denied sub nom. Boos v. White, 143 S. Ct. 242 (2022) (quoting Sexton v. Beaudreaux, 138 S. Ct. 2555, 2560 (2018)).

The Georgia Supreme Court summarily denied Anderson's application for certificate of probable cause to appeal the denial of his state habeas corpus petition, so this Court must review

the Telfair County Superior Court's decision on Anderson's state habeas petition.  <u>Wilson</u>, 138 S. Ct. at 1192.  The Telfair County court noted a petitioner claiming ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel claims must prove trial counsel rendered ineffective assistance first.  Doc. 9-8 at 6.

### C.    Application to State Habeas Court's Determinations

#### 1.    *Anderson does not meet his burden of showing the state habeas court erred in its determination regarding the failure to call a witness at the motion for new trial hearing.*

In this enumeration, Anderson argues Ms. Shein rendered ineffective assistance at the motion for new trial hearing regarding an affidavit Ms. Smith provided to Ms. Shein nine months prior to the new trial hearing.  Doc. 1-1 at 72.  According to Anderson, Ms. Smith "recanted" a critical part of her trial testimony regarding whether Anderson and Mr. Burch struggled over the rifle in this affidavit.  Anderson states Ms. Smith declared Mr. Burch grabbed the barrel of the gun and a "struggle of sorts ensued," resulting in the gun accidentally discharging and killing Mr. Burch.  <u>Id.</u>  Anderson alleges Ms. Shein improperly failed to call Ms. Smith to testify at the new trial hearing even after Ms. Shein subpoenaed Ms. Smith.

The state habeas court rejected Anderson's argument.  Anderson called Ms. Smith to testify during the state habeas proceedings.  Anderson contends Ms. Smith provided exculpatory testimony but the state habeas court failed to acknowledge Ms. Smith testified at the hearing.[5] <u>Id.</u> at 72–73.  The state habeas court ultimately determined Anderson failed to show Ms. Smith's testimony at the motion for new trial hearing would have affected the outcome of the motion.

---

[5]    Anderson's assertion the state habeas court failed to acknowledge Ms. Smith testified at the state evidentiary hearing is incorrect.  Doc. 1-1 at 72–73.  The state habeas court set forth Anderson's claimed errors and then stated Ms. Smith, Mr. Theodocion, Ms. Shein, and Anderson testified and were subject to cross-examination during the hearing.  Doc. 9-8 at 2–3.

Doc. 9-8 at 15.  Thus, Anderson could not show Ms. Shein rendered deficient performance and could not show Ms. Shein was ineffective.  Id. at 16.

Respondent states the state habeas court credited Ms. Shein's testimony where Ms. Shein explained she did not call Ms. Smith as a witness at the motion for new trial hearing because Ms. Smith's testimony would have changed again, conflicting with her affidavit.  Doc. 8-1 at 9.  Additionally, Respondent points out the state habeas court concluded Ms. Smith's trial testimony was not "significantly different" than the statements in the affidavit.  Id.  Respondent contends Ms. Smith admitted at trial she told law enforcement officials Anderson and the victim struggled over the gun.  Thus, Respondent argues the state habeas court correctly found Anderson failed to show a reasonable probability of a different outcome had Ms. Shein called Ms. Smith to testify during the motion for new trial proceedings.  Id. at 10.

Anderson fails to establish the state habeas court unreasonably applied the Strickland standard as to this enumeration.  In determining whether Ms. Shein was ineffective for failing to call Ms. Smith to testify at the motion for new trial hearing, the state habeas court began by noting Anderson was required to show how Ms. Shein's failure to call Ms. Smith to testify would have affected the outcome of his motion for new trial hearing.  The state habeas court noted Anderson had to show this in order to show prejudice under Strickland.  Doc. 9-8 at 12, 13.  In addition, the state habeas court noted Anderson had to introduce testimony from Ms. Smith (or a legally recognized substitute for her testimony) when Ms. Smith did not testify during the motion for new trial hearing.  Id. at 13.

The state habeas court observed Ms. Shein obtained Ms. Smith's affidavit through a private investigator who worked in Ms. Shein's office several months before the hearing on the motion for new trial.  In the affidavit, which Anderson submitted during the state habeas hearing,

Ms. Smith states the purpose of the affidavit was to "clarify issues not covered in trial and could have been cleared up by further questions during my testimony."  Id.  Ms. Smith continues:

> Ron Burch grabbed the barrel of the gun.  A brief struggle ensued and the gun went off.  I could see Ron Burch's hands on the barrel of the gun.
>
> When asked at trial by defense counsel I indicated there was no struggle because the altercation happened so quickly, however during statement to Shawn McGowan[6] I explained that Ron tried to get the gun.

Doc. 9-11 at 123.

Ms. Shein testified at the state habeas corpus hearing that she did not call Ms. Smith to testify or submit her affidavit during the motion for new trial because Ms. Smith's testimony was going to change again and would conflict with her affidavit.  Ms. Shein stated she made a strategic call, as Ms. Smith was "not stable enough or clear enough about her testimony." Doc. 9-8 at 14.  The state habeas court rejected Anderson's assertion that Ms. Smith's trial testimony eliminated any notion of a struggle over the rifle.  The state habeas court noted that the issue about a struggle was addressed during Ms. Smith's trial testimony.  Id. (quoting Doc. 9-12 at 541–43, where Ms. Smith testified, "It was never actually a struggle[,]" and "I didn't see a struggle.  There was never like an actual fight with the gun.").

The state habeas court also noted, during the motion for new trial proceedings, Ms. Shein raised Mr. Theodocion's alleged ineffective assistance because he did not adequately cross-examine Ms. Smith regarding a struggle between Anderson and Mr. Burch.  Id. at 15.  The state habeas court observed the trial court's determination that Mr. Theodocion "more than adequately cross-examined" Ms. Smith.  Additionally, Ms. Smith admitted she told law enforcement personnel shortly after the event that Anderson and Mr. Burch struggled for the gun.  Id.  The state habeas court concluded Anderson failed to show Ms. Smith's testimony at the motion for

---

[6]        Detective Shawn McGowan obtained Ms. Smith's statement on the night of the shooting.

new trial hearing would have affected the outcome of those proceedings and, thus, he could not

show Ms. Shein rendered ineffective assistance of counsel by not calling Ms. Smith to testify

during the motion for a new trial hearing.  Id. at 15–16.

In sum, Anderson fails to establish the state habeas court unreasonably applied the

Strickland standard as to this issue.  He presents nothing indicating the outcome of the motion

for new trial proceedings would have been different had Ms. Shein called Ms. Smith to testify

during that hearing.  See Gordon v. Singleton, No. CV 119-093, 2020 WL 3454572, at *9 (S.D.

Ga. May 4, 2020), report and recommendation adopted, 2020 WL 3454994 (S.D. Ga. June 24,

2020) (quoting Philmore v. McNeil, 575 F.3d 1251, 1265 (11th Cir. 2009) ("Prejudice turns on

whether 'the neglected claim would have a reasonable probability of success on appeal.'")).

Thus, Anderson fails to show the state court erred in finding Ms. Shein was not ineffective, and

the Court should deny this enumeration of error.

> **2.      Anderson does not meet his burden to show the state habeas court applied _Strickland_ improperly to his claim relating to the presentation of dual defenses at trial.**

In this enumeration of error, Anderson contends Mr. Theodocion's presentation of both

self-defense and accident defenses at trial and Ms. Shein's failure to assert during the appeal that

Mr. Theodocion's presentation of the defenses were error.  Mr. Theodocion tried to show at trial

Anderson initially acted in self-defense when the barrel of the rifle struck Mr. Burch's abdomen

and Mr. Burch was accidentally shot when Anderson and Mr. Burch struggled with the weapon.

Ms. Shein argued during the motion for new trial proceedings and on direct appeal Mr.

Theodocion's dual defense strategy was improper, and he erred in failing to request an

involuntary manslaughter jury charge.  Doc. 9-11 at 284–85, 389–92;[7] Doc. 10-1 at 122–24.  The trial court noted Mr. Theodocion conceded at the motion for new trial hearing the simultaneous pursuit of self-defense and accident was rare; however, the trial court determined Anderson could not show Mr. Theodocion's decision was unreasonable.  Doc. 9-1at 484.  In addition, the trial court noted Mr. Theodocion's pursuit of the self-defense and accident theories was based on Anderson's version of events at trial and to ask for an involuntary manslaughter charge would have been inconsistent with Anderson's testimony.  Id. at 489.  On appeal, the Georgia Supreme Court found, based on Mr. Theodocion's testimony at the motion for new trial motion, the trial court "properly held an instruction on involuntary manslaughter would have been inconsistent" with the dual defenses.  Anderson, 805 S.E.2d at 55.

In his Petition, Anderson asserts the facts of his case and the applicable law called for "the logical defense of involuntary manslaughter based on reckless conduct."  Doc. 1 at 8; Doc. 1-1 at 27, 33.  Anderson contends an involuntary manslaughter instruction was supported by trial evidence and evidence from his state habeas hearing, but Mr. Theodocion instead decided to present the defenses of accident by misfortune and self-defense.  Id.  Anderson maintains the pursuit of these two defenses was erroneous as a matter of law.  Doc. 1-1 at 36.  In addition, Anderson states the testimony at the state habeas hearing showed he was pointing the barrel of the gun down when he got out of his truck and never pointed it at the victim and the victim was unarmed.  Id. at 36–37.  Other testimony at the state habeas hearing revealed Mr. Burch approached Anderson and grabbed the barrel of the gun, and the rifle accidentally discharged during a "short pulling contest[.]"  Id. at 37.  Anderson states Ms. Shein rendered

---

[7]      The Court's task of untangling the layered issues involved with Anderson's Petition was made more difficult due to Respondent's inclusion of duplicate copies of items from Anderson's trial, such as the parties' requested charges and the trial court's jury charges.  See, e.g., Doc. 9-11 at 186–206, 212–337 (two copies of the parties' requested charges and five copies of the trial court's jury charges).

ineffective assistance on direct appeal when she "abandoned" the claim of Mr. Theodocion's ineffective assistance for presenting dual defenses of self-defense and accident at trial.[8]  Id. at 42.  Anderson notes Ms. Shein did pursue a claim of ineffective assistance of trial counsel based on Mr. Theodocion's failure to request a jury charge on involuntary manslaughter.  Id. at 27, 33, 42–43.  Anderson asserts the state habeas court's determination on this issue represents an unreasonable application of clearly established law.  Id. at 55.

Respondent contends the state habeas court determined trial counsel's decision to pursue two defenses at the same time was rare but also a matter of reasonable trial tactics and strategy.  Doc. 8-1 at 8.  In so doing, the state habeas court looked to the Georgia Supreme Court's observation about Mr. Theodocion's testimony during the motion for new trial hearing and found his decision to present two defenses to be a reasoned decision.  Id.  Respondent asserts Anderson fails to show the state habeas court's decision was not reasonable.  Id.

The state habeas court began by explaining that matters of "reasonable trial strategy and tactics" do not constitute ineffective assistance of counsel, and an attorney's decision about what defense or defenses to pursue (including an all-or-nothing defense) is a question of trial strategy.  Doc. 9-8 at 7 (citing cases).  That court considered Mr. Theodocion's testimony during the motion for a new trial hearing.  In this testimony, Mr. Theodocion conceded it was "rare" to pursue both self-defense and accident as defenses at the same time, but the theory was that the

---

[8]        Anderson recognizes Ms. Shein raised on appeal an ineffective assistance claim relating to the "wrong defense[s]" presentation at trial from Mr. Theodocion but states Ms. Shein abandoned that claim.  Doc. 1-1 at 42–43.  Although Ms. Shein did not separately contend on appeal Mr. Theodocion rendered ineffective assistance by presenting the dual defenses, she did argue on appeal: "Trial counsel and the trial court seemed to misunderstand that voluntary manslaughter can be consistent with an accident and justification defense."  Doc. 10-1 at 213.  It is worth noting Ms. Shein's argument regarding the dual defenses indicates she intended to argue for an *in*voluntary manslaughter charge, as every other surrounding mention of the charge describes involuntary manslaughter.  See id. at 213–14.  Thus, Ms. Shein arguably did raise this issue on direct appeal.

use of the gun was self-defense when Mr. Burch started to approach Anderson and the firearm discharged "accidentally."[9]  Id.  The state habeas court also noted Mr. Theodocion's testimony before it, during which Mr. Theodocion stated self-defense was the original defense because Anderson did not point the rifle at Mr. Burch until Mr. Burch charged Anderson and the struggle that ensued resulted in the accidental discharge.  Id. (citing Doc. 9-11 at 44–45).  The habeas court determined the record before it established Mr. Theodocion's decision to raise two defenses at the same time was a matter of strategy, which is presumptively reasonable.  Id.  The state habeas court continued, noting the state of the law at the time of its decision allowed for simultaneous defenses "where an armed party is defending an attack from another party when the weapon discharges," and Anderson made "'no affirmative showing that the purported deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of conscious and deliberate trial strategy.'"  Id. at 8 (quoting Turner v. State, 418 S.E.2d 52, 53 (Ga. 1992), and Archie v. State, 545 S.E.2d 179, 181 (Ga. Ct. App. 2001)).

Anderson fails to meet his burden of showing the state habeas court applied Strickland unreasonably on this enumeration of error.  In reaching its determination, the state habeas considered Mr. Theodocion's testimony and applied Strickland—the clearly established law—and found Anderson did not show ineffective assistance by Mr. Theodocion, both for presenting

---

[9]     The state habeas court noted Anderson did not raise this issue on appeal, yet the Georgia Supreme Court considered Mr. Theodocion's testimony on this issue during the motion for new trial proceedings as part of a larger issue the court was addressing.  The Georgia Supreme Court observed Mr. Theodocion's testimony established he made a "reasoned decision" to present self-defense and accident as defenses based on the evidence that Anderson first acted in self-defense when he "thrust the rifle into [Mr. Burch's] abdomen," but Mr. Burch was shot accidentally after he and Anderson fought over the gun.  Because of this, the trial court gave jury instructions on both defenses.  Doc. 9-8 at 7 (quoting Anderson v. State, 805 S.E.2d 47, 55 (Ga. 2017)).  The Supreme Court of Georgia also noted the trial court "properly held an instruction on involuntary manslaughter would have been inconsistent" with Anderson's self-defense and accident defenses.  Anderson, 805 S.E.2d at 55.

a dual defense and for failing to ask for an involuntary manslaughter charge.[10]  Because

Anderson could not show ineffective assistance of trial counsel on Mr. Theodocion's part,

Anderson could not show Ms. Shein was ineffective on appeal for failing to raise Mr.

Theodocion's alleged ineffectiveness at trial for pursuing dual defenses.  McDuffie, 2020 WL

2744113, at *11 (citing Payne v. Allen, 539 F.3d 1297, 1314–15 (11th Cir. 2008), for the notion

an ineffective assistance of appellate counsel claim must rest on a showing of merit to an

underlying ineffective assistance of trial counsel claim)).  Thus, the Court should deny this

enumeration of error.

> **3.**    ***Anderson fails to show the state habeas corpus court applied Strickland
> in an unreasonable manner based on his claim relating to the failure to
> investigate a juror before the motion for new trial hearing.***

In this enumeration, Anderson asserts Ms. Shein was ineffective on appeal for failing to

contend Mr. Theodocion rendered ineffective assistance during voir dire proceedings.

Specifically, Anderson states Mr. Theodocion failed to ask Robert Harrison, who was one of the

jury members at trial, about his job at the funeral home.  Anderson also states the juror was not

investigated prior to the motion for new trial hearing.

The state habeas court noted Ms. Shein did raise this issue on direct appeal.  The state

habeas court also noted Anderson's argument that Ms. Shein should have called Mr. Theodocion

and Mr. Harrison in a different order than she did at the motion for new trial hearing.  However,

that court noted the Georgia Supreme Court's finding relating to Anderson's contentions about

---

[10]    Anderson argues at length the trial court should not have allowed the presentation of dual
defenses under Turner v. State, 418 S.E.2d 52 (Ga. 1992), and that Mr. Theodocion misunderstood the
point of law expressed in that case, as did Ms. Shein and the state habeas court.  Doc. 1-1 at 55–71.  But
Anderson must show the state habeas court applied Strickland in an objectively unreasonable way when it
considered and rejected Anderson's claim that Ms. Shein was ineffective in how she presented her
challenge during Anderson's direct appeal.  Anderson fails to show the state habeas court applied
Strickland incorrectly, much less in an objectively unreasonable way.

Mr. Harrison was based on Anderson's failure to demonstrate Mr. Theodocion rendered ineffective assistance during the voir dire proceedings.  Doc. 9-8 at 17.

In his Petition, Anderson contends Ms. Shein failed to investigate the juror prior to the motion for new trial hearing, even though she raised a claim of ineffective assistance of trial counsel based on Mr. Theodocion not "properly question[ing]" the juror during the voir dire process.  Anderson contends Mr. Theodocion should have asked different and more questions of Mr. Harrison during voir dire after learning Mr. Harrison was friends with Mr. Burch and his family and learning the juror worked at the funeral home that provided the services for Mr. Burch and his family.  Thus, Anderson argues Ms. Shein rendered ineffective assistance because she did not call Mr. Harrison to testify at the motion for new trial hearing until after she called Mr. Theodocion to testify.  Anderson states Mr. Harrison volunteered the information he embalmed Mr. Burch and Ms. Shein could not then question Mr. Theodocion about his alleged failure to fully learn of the juror's connection to the victim.  Doc. 1-1 at 90.  Anderson argues Mr. Theodocion admitted on direct examination during the state habeas hearing had he known the juror embalmed the victim, he would have moved to strike the juror for cause and there was no strategic reason for not questioning the juror further during voir dire once he learned the juror worked at the funeral home.  Id. at 91.

Respondent asserts the state habeas court did not find Anderson showed a reasonable probability his appeal would have had a different outcome had Ms. Shein decided to call the juror in question prior to calling Mr. Theodocion to testify during the motion for new trial proceedings.  Doc. 8-1 at 11.  Thus, Anderson cannot show the state habeas court's application of Strickland was unreasonable.

On this enumeration, Anderson fails to show the state habeas court applied <u>Strickland</u> in an unreasonable manner based on the facts before it.  The state habeas corpus court found Anderson was not entitled to any relief on this claim of error.  Doc. 9-8 at 17.  The state habeas court found Anderson raised this issue on direct appeal and, despite Anderson's claim his argument was lost "in the quagmire" on appeal, the Georgia Supreme Court expressly determined Anderson failed to demonstrate the juror was not qualified to sit on the jury or was subject to a challenge for cause.  <u>Id.</u> & at 16.

The Georgia Supreme Court also determined, even if Anderson demonstrated Mr. Theodocion did not exercise "reasonable professional assistance during voir dire," Anderson did not establish the requisite showing of prejudice.  <u>Id.</u>  The state habeas court reasoned Anderson failed to show Ms. Shein rendered ineffective assistance during the motion for new trial proceedings on his claim Ms. Shein should have called Mr. Harrison and Mr. Theodocion in a different order.  This reasoning was based on the Georgia Supreme Court's determination Anderson failed to show Mr. Theodocion's actions during the voir dire process prejudiced Anderson.  <u>Id.</u>  In other words, the state habeas court found Anderson could not show Ms. Shein was ineffective during the motion for new trial proceedings because Anderson did not show Mr. Theodocion was ineffective during the voir dire process at trial.

Again, Anderson fails to show the state habeas court applied <u>Strickland</u> in an unreasonable manner based on the facts before it.[11]  Accordingly, the Court should deny this enumeration of error.

---

[11]      The Georgia Supreme Court thoroughly discussed this juror and the voir dire process in its opinion.  <u>Anderson</u>, 805 S.E.2d at 51–54.  The Georgia court determined Anderson failed to show Mr. Harrison answered any questions dishonestly during the voir dire process, concealed any facts relating to his involvement with Mr. Burch's body, or was not qualified to sit on the jury.  <u>Id.</u>

4.   ***Anderson does not show the state habeas court improperly applied <u>Strickland</u> to his claim based on the prosecution's closing arguments.***

The crux of this enumeration of error is this: Anderson contends Ms. Shein rendered ineffective assistance on appeal by failing to raise Mr. Theodocion's failure to object to the State's statements during closing argument about alleged domestic violence incidents between Anderson and his wife.  Anderson clarified Mr. Theodocion did object to the prosecutor's statements in her closing argument on the basis of there being no evidence in the record regarding domestic violence.  But Anderson asserts Mr. Theodocion should have objected under the "proper standard," which he contends would have been prosecutorial misconduct.  Doc. 9-8 at 20.

According to Anderson, Ms. Shein should have argued on appeal that Mr. Theodocion erred at trial because Mr. Theodocion failed to move for a mistrial for prosecutorial misconduct after the prosecutor made a "highly inflammatory statement" during closing argument about the police having to be called for a domestic violence incident between Anderson and his wife, as there was no evidence presented at trial to support this statement.  Doc. 1-1 at 117.  Anderson states he was able to call character witnesses during trial who testified they had no knowledge of issues between Anderson and his wife.  Anderson states the prosecutor was unable to impeach these witnesses and used her closing argument to "back-door" impeach Anderson's good character.  Id. at 118–19.

Respondent argues the state habeas court found Mr. Theodocion properly objected to the statements at issue and moved for a mistrial or for curative instructions based on these statements.  Doc. 8-1 at 12.  In addition, Respondent notes the state habeas court found Anderson failed to show Ms. Shein was ineffective for not raising this claim on appeal.

In the state habeas proceedings, the court noted Anderson argued Mr. Theodocion failed to object "under the proper standard." Doc. 9-8 at 20. Specifically, Anderson stated Mr. Theodocion should have objected to the prosecutor's statements as being prosecutorial misconduct, as the comments were made in bad faith, and Mr. Theodocion should not have made the objection on "general grounds[.]" Id. at 21. The state habeas court noted Mr. Theodocion objected to the prosecution's closing argument and the trial court judge responded the jury would decide what is evidence and allowed the State to proceed. In addition, Mr. Theodocion moved for a mistrial or a curative instruction, but the trial judge denied the motion for a mistrial and informed Mr. Theodocion the pattern jury charge advising the jury closing arguments are not evidence would be sufficient. Id. The state habeas court found Anderson failed to prove prosecutorial misconduct by the record or as a matter of law,[12] and Anderson could not show the result of the trial would have been different even if Mr. Theodocion raised an objection based on prosecutorial misconduct (rather than on "general grounds"). In other words, the state habeas court concluded Anderson failed to show any prejudice based on Mr. Theodocion's failure to object on what Anderson deems to be the proper ground. The state habeas court concluded Anderson failed to show Mr. Theodocion performed deficiently by not objecting to the State's closing argument based on prosecutorial misconduct. As a result, Anderson could not show Ms. Shein rendered ineffective assistance for failing to raise on appeal Mr. Theodocion's failure to raise a prosecutorial misconduct objection at trial. Id. at 22.

Anderson fails to show the state habeas court applied Strickland in an unreasonable manner based on the record before it or the applicable law. Indeed, Anderson makes no showing

---

[12]      The state habeas court looked to Georgia law on prosecutorial misconduct allegations, noting such a charge is "'serious . . . and is not to be lightly made[,]'" which a defendant must prove "'by the record and by legal authority.'" Doc. 9-8 at 22 (quoting Meredith v. State, 438 S.E.2d 644, 647 (Ga. Ct. App. 1993)).

that had Mr. Theodocion objected on an additional or different ground to the prosecutor's statement during the closing argument the outcome of Anderson's trial would be different. Anderson fails to show Mr. Theodocion was ineffective by not challenging the prosecutor's statements more than once or perhaps more strenuously than Mr. Theodocion did.  By extension, the state habeas court reasonably determined Ms. Shein could not have been ineffective for failing to raise this claimed ineffective assistance of trial counsel claim on appeal.  Thus, the Court should deny this enumeration of error.

>     5.    *Anderson does not meet his burden under <u>Strickland</u> to show the state habeas court improperly denied relief on his claim relating to the nolle prosequi of the voluntary manslaughter charge.*

In this enumeration, Anderson argues that on appeal Ms. Shein should have asserted an additional ground based on Mr. Theodocion's acquiescence to the prosecution's nolle prosequi of count four, the voluntary manslaughter charge.[13]  Anderson describes Mr. Theodocion's decision "to allow" the prosecution to nolle prosequi the voluntary manslaughter charge after the jury had been empaneled as "deceptive and erroneous decision to allow."  According to Anderson, Mr. Theodocion's decision eliminated a lesser-included offense and he did not discuss the significance of an all-or-nothing defense with Anderson.  Doc. 1-1 at 137.  Anderson argues Ms. Shein should have raised this issue on appeal, but did not, resulting in Ms. Shein's

---

[13]     Anderson makes one contention that warrants some clarification.  Anderson maintains the State returned two indictments against him, only one of which included a charge of voluntary manslaughter. Doc. 1-1 at 137–38.  Anderson is mistaken.  On direct examination during the state habeas hearing, Mr. Theodocion explained the "two" indictments were the same, but one had been redacted to remove the voluntary manslaughter charge after it was nolle prossed.  The indictment was simply redacted so it could be presented to the jury.  Doc. 9-11 at 36–37, 39.  There is nothing in the record that supports Anderson's assertion two separate indictments were returned.

ineffective assistance.[14]  Respondent argues the state habeas court properly denied Anderson

relief on this ground.  Doc. 8-1 at 13.

The state habeas court considered and rejected Anderson's arguments on this ground for

two reasons.  Doc. 9-8 at 9–11.  First, the state habeas court concluded the nolle prosequi order

was entered weeks before the jury was empaneled, the prosecution could freely nolle pros the

voluntary manslaughter charge, regardless of whether Anderson and his counsel consented.[15]

Because Anderson's consent was immaterial, Anderson's contention that Mr. Theodocion

rendered ineffective assistance by consenting to (or not opposing) the nolle prosequi lacked all

merit.[16]  Likewise, Ms. Shein could not have rendered ineffective assistance by not raising this

issue as a ground during the direct appeal.

The state habeas court offered a second reason for denying relief on this ground.  The

state habeas court concluded that to prevail on this ground, Anderson would need to show Mr.

Theodocion's failure to consult with Anderson about the all-or-nothing defense strategy was

prejudicial to Anderson's defense, but Anderson failed to do so.  Id. at 11.  Specifically,

Anderson would need to show a reasonable probability that if Mr. Theodocion had consulted

with him on the all-or-nothing defense, then Mr. Theodocion would not have eliminated the

---

[14]     Anderson is correct that Ms. Shein did not raise Anderson's contentions about Mr. Theodocion's
decisions on the nolle prosequi issues on direct appeal.  Doc. 10-1 at 85–129, 198–217.

[15]     The date of the nolle prosequi order and the date the jury was empaneled are important because of
the provisions of O.C.G.A. § 17-8-3.  Under that statute, a prosecutor may enter a nolle prosequi with the
consent of the court any time before the case has been "submitted to a jury."  Once the case has been
submitted to a jury, a nolle prosequi cannot be entered unless the defendant consents.  The term
"submitted to a jury" has been construed to mean once the jury has been empaneled.  Truelove v. State,
691 S.E.2d 549, 551 (Ga. Ct. App. 2010).

[16]     The state habeas court made express determinations that the nolle prosequi order was entered
before the jury was empaneled, but the court did not expressly state the consequence of those
determinations.  Even so, the implication is clear: Mr. Theodocion did not, and could not, render
ineffective assistance of counsel by consenting to the prosecutor's action when Anderson's consent was
immaterial.

voluntary manslaughter charge and that such a strategy (i.e., pursuing a voluntary manslaughter defense) would have in reasonable probability resulted in a different outcome.  The state habeas court concluded Anderson did not make the requisite showing because there was no evidence of voluntary manslaughter, and Anderson failed to show the all-or-nothing defense was unreasonable.

Anderson fails to show the state habeas court applied Strickland in an unreasonable manner on this ground.  Conversely, the two reasons the state habeas court articulated for rejecting Anderson's argument are well supported by the record.  I address each reason in turn.

First, the record fully supports the state habeas court's conclusion that the jury was not empaneled at the time the nolle prosequi was entered, and, thus, Anderson's consent was irrelevant.  Anderson argues the nolle prosequi was entered several days after trial began, but there is no support for that contention.[17]  The nolle prosequi order was signed and presented in open court on September 28, 2012.  Doc. 9-11 at 173.  The first day of Anderson's trial was October 15, 2012, which is the day the jury was selected.  Doc. 9-12 at 177.  The next day, October 16, 2012, was the second day of trial.  The trial court gave the jury a brief overview of the indictment and the charges against Anderson, and the voluntary manslaughter was not mentioned.  Id. at 413.  Similarly, the prosecutor did not mention the voluntary manslaughter charge in her opening statement.  Id. at 424.

Anderson fails to show the state habeas court applied Strickland in an unreasonable manner on its determination about the timing of the nolle prosequi order.  The state habeas court

---

[17]     At the state habeas hearing, Mr. Theodocion testified, at times, that the nolle prosequi order might have been entered after the jury was empaneled but ultimately testified, "I have no idea—I don't specifically recall when and where the [voluntary manslaughter charge] was dismissed by the State, whether it happened first day of trial, third day of trial, the week before trial; I honestly don't, I know I wasn't going to object to it."  See Doc. 9-11 at 34, 41–42, 43.

explained the record demonstrated the nolle prosequi order was signed and entered in open court on September 28, 2012.  Doc. 9-8 at 10 (citing Doc. 9-11 at 173).  In addition, the state habeas court noted O.C.G.A. § 17-8-3 allowed the State to enter the nolle prosequi with the trial court's consent since Anderson's case had not been submitted to the jury.  Id. (citing O.C.G.A. § 17-8-3, which allows for the prosecutor to enter a nolle prosequi with the consent of the court before the case has been submitted to a jury).  The voluntary manslaughter charge had already been nolle prossed before the jury was empaneled, so it is immaterial whether Anderson consented to it.  Because Anderson's consent was immaterial, there is no basis for the contention that Mr. Theodocion rendered ineffective assistance by consenting to (or not opposing) the nolle prosequi.  Likewise, Ms. Shein could not have rendered ineffective assistance by not raising this issue as a ground during the direct appeal.

Turning to the second reason, Anderson also fails to show the state habeas court applied Strickland in an unreasonable manner when it found Anderson failed to demonstrate any prejudice arising from the nolle prosequi order.  The state habeas court recognized Anderson and his counsel would not have pursued a voluntary manslaughter defense even if the charge had remained pending in the case.  In reaching its conclusion, the state habeas court considered the nature of the defense Mr. Theodocion presented at trial and the reasons for the defense strategy.  Doc. 9-8 at 10–11.  Mr. Theodocion testified at the state habeas hearing at length about how he and Anderson approached defending the case.  Mr. Theodocion knew well in advance of trial he was not going to argue Anderson could be convicted of voluntary manslaughter.  Doc. 9-11 at 39, 40.  Rather, Mr. Theodocion planned to argue self-defense and accident as defenses, i.e., Anderson did not mean to pull the trigger and shoot the victim.  Id. at 39.  Mr. Theodocion explained he would pursue the self-defense and accident defenses regardless of whether the

prosecution dismissed the voluntary manslaughter charge.  Id.  Mr. Theodocion stated that if the prosecution had not dismissed the voluntary manslaughter count, he would have asked for a directed verdict on that count because the evidence did not support the charge.  Id. at 40.  Mr. Theodocion explained he did not communicate the nature of Anderson's defenses to the prosecution prior to trial.  Id.

Mr. Theodocion explained he understood the consequences of the defense strategy and it was a deliberate decision to not suggest Anderson could be convicted of voluntary manslaughter. Mr. Theodocion acknowledged, with voluntary manslaughter off the table, he placed Anderson in an "all or nothing defense situation[.]"  Id. at 40.  Mr. Theodocion noted Anderson's actions presented an unusual situation because Anderson maintained he did not go to the victim's home with the intent to use the rifle on him.  Instead, Anderson used the rifle to strike the victim in the chest when the victim "came at" Anderson, which was self-defense, and then the two men fought over the gun and the gun discharged, which was an accident.  Id. at 49–50.  Mr. Theodocion also testified he considered the facts that Anderson brought a loaded firearm to the victim's house and the victim did not have a firearm.  Id. at 51–52.  Based on those facts, Mr. Theodocion decided to present two defenses, which the trial judge allowed.  Id.  Mr. Theodocion testified he and Anderson discussed the strategy.  Id. at 39–40 ("So we weren't going to ask for voluntary manslaughter, didn't want—you and I had talked about it.").

The state habeas court concluded Anderson presented no evidence indicating voluntary manslaughter would have been a valid charge and, as a result, Anderson failed to show a reasonable probability the jury would have found him guilty of voluntary manslaughter, even if it had been an option.  Relatedly, the state habeas court concluded Mr. Theodocion's decision to pursue an all-or-nothing defense was unreasonable.  Accordingly, the state habeas court

concluded Anderson failed to establish Mr. Theodocion's failure to consult Anderson on the

charges was prejudicial to his defense or the outcome of the trial would have been different.[18]

Anderson presents no evidence or argument the state habeas court applied <u>Strickland</u> in

an unreasonable manner in evaluating prejudice.  The state habeas court looked to Georgia law to

evaluate whether Anderson could show he was prejudiced by Mr. Theodocion's "tactical

decision[s]" relating to the voluntary manslaughter charge and disposition and applied those

findings to the <u>Strickland</u> standard.  <u>Van Alstine v. State</u>, 426 S.E.2d 360, 361 (Ga. 1993);

<u>see also</u> O.C.G.A. § 17-8-3.  The state habeas court found Anderson failed to establish he was

prejudiced in any way by Mr. Theodocion's actions.  <u>Strickland</u>, 466 U.S. at 697 (stating if a

petitioner does not carry his burden on one prong of the <u>Strickland</u> standard, a court need not

consider the other prong).

In sum, Anderson has failed to establish ineffective assistance of trial counsel, and,

therefore, appellate counsel could not have provided ineffective assistance by failing to raise

these issues on appeal or during the motion for new trial proceedings.  The Court should deny

this enumeration of error.

> **6.     *Anderson does not meet his burden of showing the state habeas court unreasonably applied <u>Strickland</u> to his claim relating to the admission of 911 calls.***

Anderson's last enumeration concerns three 911 calls that were admitted into evidence at

trial.  At trial, the prosecution indicated it was going to play a recording that contained three 911

calls Ms. Smith made immediately after the shooting.  Mr. Theodocion objected to the

---

[18]     As noted, Mr. Theodocion testified that he did, in fact, consult with Anderson about the all or nothing defense and it was a decision counsel and client made together.  Doc. 9-11 at 39–40 ("So we weren't going to ask for voluntary manslaughter, didn't want—you and I had talked about it.").  There is no evidence in the record indicating Mr. Theodocion did not consult with Anderson.  Therefore, it appears the state habeas court assumed without deciding that even if Mr. Theodocion did not consult with Anderson about the all-or-nothing defense, Anderson suffered no prejudice from that error.

prosecution playing any of the calls, but the trial court judge overruled the objection.  Anderson now argues Mr. Theodocion should have objected again (or more strenuously) once the first 911 call was done playing.  Specifically, Anderson argues Mr. Theodocion did not sufficiently challenge Ms. Smith's prior statements to law enforcement officials and, as a result, the second and third 911 calls were used to bolster Ms. Smith's testimony at trial.  Doc. 9-8 at 18.  By extension, Anderson argues Ms. Shein should have raised this issue on appeal but she did not.  Doc. 1-1 at 153.  Anderson states Ms. Shein rendered ineffective assistance by failing to raise the issue.

Respondent argues the state habeas court correctly concluded Anderson did not show trial counsel's strategic decision was unreasonable or there was a reasonable probability the outcome of his trial would have different if counsel objected to the admission of the 911 calls more than once.  Doc. 8-1 at 14.

Anderson fails to show the state habeas court applied Strickland in an unreasonable manner in considering the 911 calls, Mr. Theodocion's objection, or Ms. Shein's decision to not raise the issue on appeal.  The state habeas noted Anderson conceded the use of one of the first 911 call was "an acceptable tactic on behalf of the government and provides essentially no basis for an objection . . . ."  Doc. 9-8 at 18.  Anderson argued, however, the prosecution's use of the other two 911 calls was a "testimonial situation and a clear case of bolstering the witnesses['] statements and/or testimony . . . as prior consistent statements."  Id.  The state habeas court considered Mr. Theodocion's testimony at the state habeas evidentiary hearing.  Mr. Theodocion explained he objected to the admission of the 911 calls before the calls came into evidence because Ms. Smith (the caller) testified and could tell the jury what happened.  Id. at 19 (quoting Doc. 9-11 at 58, 61).  Mr. Theodocion explained the trial judge overruled his objection.

31

The state habeas court ultimately concluded Anderson did not show: (1) Mr. Theodocion's strategy in making an objection before the calls were introduced but not after his objection was overruled was unreasonable; or (2) if Mr. Theodocion had objected again, the outcome of Anderson's trial would have been different.  The state habeas court noted:

> The decision of whether to interpose certain objections is a matter of trial strategy and tactics.  Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.

Id. (quoting Henry v. State, 729 S.E.2d 429, 432 (Ga. Ct. App. 2012)).  The state habeas court noted, in order to prove Mr. Theodocion rendered ineffective assistance, Anderson had to show the decision not to object again or more strenuously was unreasonable and the result would have been different had Mr. Theodocion objected to the admission of the 911 calls a second time.  Id. at 19–20.  The state habeas court concluded Anderson failed to carry his burden under Strickland because the record showed Mr. Theodocion did object to the introduction of the 911 calls, the judge overruled the objection, and the 911 calls were played for the jury.  Id. at 20.  That court concluded there was no indication that a second objection would have produced a different result.  Thus, the state habeas court found Anderson did not meet his burden under Strickland because Anderson could not show Mr. Theodocion was ineffective and, therefore, could not show Ms. Shein was ineffective for failing to raise this issue on appeal.  Id. at 20.

Anderson fails to show the state habeas court applied Strickland in an unreasonable manner.  There is nothing to suggest Mr. Theodocion's conduct was unreasonable or deficient, and Anderson has offered nothing to show a second objection by Mr. Theodocion would have produced a different result at trial.  Therefore, Ms. Shein could not have rendered ineffective assistance of counsel by not raising the issue on appeal.  The Court should deny this enumeration of error.

## II.      Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Anderson leave to appeal *in forma pauperis* and deny him a Certificate of Appealability.  Though Anderson has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis supplied); <u>see also</u> Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding in forma pauperis is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  <u>Busch v. County of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  <u>Moore v. Bargstedt</u>, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001)); <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued.  A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a

constitutional right.  The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Id.</u>  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of the filings in this case and applicable case law and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** Anderson *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Anderson's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, doc. 1, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Anderson leave to proceed *in forma pauperis* and a Certificate of Appealability.  I **GRANT** Anderson's Motions for Report

and Recommendation but **DENY** his alternative Motion for Recusal.  Docs. 16, 18.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of February, 2024.

<br>

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA